[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On December 23 and 24, 1998, the court heard a trial of the issues raised under d.n. CV96 53751 and the third count of d.n. CV93-46748 which was consolidated for trial with the first-cited case. Other counts of CV93-46748 were previously heard and decided by the court, Loiselle, J.T.R.
In CV96-53751, the plaintiffs, Donald and Dolores Kemp, CT Page 873 allege that the defendants, Timothy and Ann Panteleakos, unlawfully cut, or caused to be cut, trees which were growing on the Kemps' land; that Timothy Panteleakos converted a dump rake to his own use, and that he committed assault and battery upon Donald Kemp, on or about December 11, 1993. The third count of CV 93-46748 alleges that Timothy Panteleakos assaulted and battered Donald Kemp on or about June 13, 1993.
The court finds the following background facts. All of the incidents and causes of action allegedly occurred during 1993 when the parties were neighbors. A dispute arose concerning the boundary lines shared by the parties' farms. On July 18, 1993, the plaintiffs commenced CV93-46748 in order quiet title and resolve the boundary dispute. On May 8, 1996, the court, Loiselle, J.T.R, concluded that issue finding that the plaintiffs had acquired the disputed land by adverse possession. Kemp v.Panteleakos, Superior Court, Windham J.D., d.n. CV93-46748 (May 8, 1996). The court specifically found that the plaintiffs abandoned any claim to record title to the property in question.
 A
As to the first and second counts of CV 96-53751, which relate to the unlawful harvesting of trees, the court finds that during the fall of 1993, Timothy Panteleakos, through his agents hired for that purpose, felled several trees which were growing on a piece of land owned by the plaintiffs and referred to by the parties as "the woodlot." Two other large and ancient red oak trees were also harvested, without the plaintiffs' authority or consent, from the margin of woods to the rear of the plaintiffs' residence and on the plaintiffs' land. One of these trees was thirty-six inches in diameter at its base, and the other was thirty inches. Both were of considerable height. The larger of the two was growing around forty feet into the woods, and the smaller around 300 feet.
Timothy Panteleakos hired Buckland Squires to harvest both the group of trees on the woodlot and the two trees closer to the plaintiffs' residence. Squires cut and hauled the trees. At the time of severance, however, Timothy Panteleakos genuinely, albeit incorrectly, believed the trees which were taken were on his own land.
The trees severed from the woodlot had a reasonable value as timber and firewood of $1250. The value of the two red oaks CT Page 874 presents a more difficult valuation problem. The plaintiffs presented the testimony of an expert forester who estimated the value of the larger red oak at $15,000. He considered that tree to be ornamental and essentially used replacement value with adjustments to arrive at this figure.
The court rejects this assessment. The tree was not ornamental but was growing in the woods. Even though the red oak was a fine, large, and attractive specimen of red oak, it had no ornamental function such as providing shade or being part of a landscape plan other than being one member of several trees forming a woods behind a residence.
Even assuming that the larger red oak were ornamental, the measure of damage set forth in G.S. § 52-560 is not replacement value but the diminution of the land resulting from the destruction of the tree. Malonado v. Connecticut Light Power Co., 31 Conn. Sup. 536, 539 and 540 (1974). The plaintiffs' expert scrupulously avoided testifying to such diminution, if any. Because he was not a real estate appraiser, such circumspection was appropriate. The court heard no evidence regarding the diminishment in value of the plaintiffs' land attributable to the loss of this tree.
The court did receive evidence that Timothy Panteleakos received certain sums for the two red oaks from the person to whom he sold the timber. Based on this evidence, the court finds that the reasonable value of these two trees was $150 each.
Section 52-560 does not create an independent statutory right of action but rather prescribes the measure of damages where compensatory damage would, in the absence of the statute, be recoverable. Avery v. Spicer, 90 Conn. 576, 583 (1916). The court finds that the plaintiffs have met their burden of proving, by a preponderance of the evidence, that they possessed the land upon which the harvested trees were rooted and that Timothy Panteleakos converted the same to his own use.
The court also finds, however, that Timothy Panteleakos has met his burden of showing, by a preponderance of the evidence, that he believed at the time of the taking that the trees were located on his land. Petroman v. Anderson, 105 Conn. 366, 368
(1926). The boundary dispute was in full vigor at the time the trees were cut and remained unresolved until the May 8, 1996 judgment. The court credits Timothy Panteleakos' testimony that CT Page 875 he believed only trees on his property were harvested by his agents.
Consequently, the court awards damages to the plaintiffs as to the first and second counts against Timothy Panteleakos in the sum of $1500. There was no evidence that Ann Panteleakos participated in any way in this conversion, and the court finds for her on these counts.
 B
Turning to the third count in CV96-53751, which alleges the conversion of a dump rake, the court finds that Timothy Panteleakos, without license, took possession of this haying implement and refused to return the machine to the plaintiffs upon request. The equipment presently rests on the site of the defendants' former residence neighboring the plaintiffs' farm.
Again Timothy Panteleakos mistakenly believed the dump rake to have been on his property. The machine has sat unused by anyone and exposed to elements for twenty-one years. The court finds that the plaintiffs have failed to demonstrate, by a preponderance of the evidence, the reasonable value of this item. However, the court orders Timothy Panteleakos to refrain from interfering with the plaintiffs retrieval of this rake from its present location.
 C
The fourth count of CV96-53751 and the third count of CV93-46748 both allege assault and battery by Timothy Panteleakos upon Donald Kemp. The court finds that both incidents involved the intentional bumping by Timothy's torso against Donald's torso. On one occasion Timothy knocked Donald's hat from his head. On no occasion was any pain or suffering endured nor was any physical or mental injury sustained. No proof of economic or noneconomic damages deriving from these confrontations was adduced. In the absence of proof of partial damages, the court awards nominal damages of $1 for each count. The court finds that punitive damages are appropriate because of the intentional physical contact resorted to by Timothy Panteleakos. As punitive damages the court awards $250 which sum represents the reasonable attorney's fees reasonably expended to bring and prove these counts. CT Page 876
No claim is made that Ann Panteleakos participated in these incidents.
In sum, the court finds for both plaintiffs against Timothy Panteleakos in the amount of $1500 on the first and second counts of CV96-53751; for the plaintiffs against Timothy Panteleakos as to the third count of CV96-53751; for Donald Kemp against Timothy Panteleakos as to the fourth count of CV96-53751 and the third count of CV93-46748 in the amount of $1 nominal damages per count and $250 in punitive damages total for both. The court also orders Timothy Panteleakos to refrain from interfering with the Kemps retrieval of the dump rake. The court finds for Ann Panteleakos on all counts which apply to her.
Sferrazza, J.